# BECHER-BARRETT-LOCKERBY COMPANY v. JOE HILBERT AND ANOTHER.
## MUNSTER EQUITY ELEVATOR COMPANY, APPELLANT.[1]

June 19, 1936.

No. 30,833.

*Daniel F. Foley,* for appellant.
*Van Fossen & Van Fossen,* for respondent.

LORING, JUSTICE.

This suit was brought to recover $1,637.76 alleged to be due the plaintiff for losses on the Duluth Board of Trade by the named defendant Joe Hilbert, whose account, it is claimed, was guaranteed by the Munster Equity Elevator Company. Hilbert was not served with process and appeared only as a witness. The trial was to the court without a jury and resulted in an order for judgment in favor of the plaintiff for the sum sued for. The case comes here upon appeal by the Munster company from an order denying its motion for a new trial.

The principal question presented is whether the record compels a conclusion that the transaction in which the guaranty was given was gambling in futures or one in which actual delivery of grain was intended.

[1] Reported in 267 N. W. 727.

542

The plaintiff is a broker dealing in grain on the Chamber of Commerce in Minneapolis and the Duluth Board of Trade. The Munster company, hereinafter referred to as the defendant, is a North Dakota corporation, with its principal place of business at New Rockford in that state, where it owns and operates a grain elevator. Joe Hilbert at the time of the transactions here involved was a substantial farmer near New Rockford. From 1922 to 1926 the plaintiff handled the disposition of all, or nearly all, the grain shipped by defendant. It also handled trades in futures for a number of defendant's customers. Apparently after 1926 the plaintiff handled no actual grain for the defendant but did handle numerous trades in futures. In 1926 and 1927 it handled such trades for Hilbert, and they were closed out by settlements of the different prices without the actual delivery of grain. In September, 1928, Hilbert, through McKay, the local manager of defendant, purchased through plaintiff 10,000 bushels of durum wheat for December delivery at 99 cents a bushel. Hilbert, through McKay, advanced $1,000 for margin. In November he ordered the purchase to be changed over to May delivery. · This was accomplished by selling the December delivery and buying a like amount for May delivery. In like manner it was again changed over to July and September. This change-over process continued until July, 1930, up to which time Hilbert had advanced a total of $5,000 as margin. In September, 1930, the trade was closed out by the plaintiff with a loss of $1,637.76 over and above the margin Hilbert had put up. It is plaintiff's contention· that the defendant guaranteed this account and is liable for the loss.

Without going into the form of the alleged guaranty or McKay's authority to make it, we examined the record in regard to the nature of the transaction to see whether reasonable minds might differ as to the inferences to be drawn from the evidence. It is conceded by the plaintiff that a contract for the future delivery of a commodity is invalid when the parties to the contract do not intend the delivery of the subject matter but a settlement based on the differences between the contract and the market price. Tested by this rule, we conclude that as a matter of law the record compels a finding that

Hilbert and the plaintiff were engaged in a gambling transaction and that there was no intent on the part of either that the actual grain contracted for should be delivered. Such had been the character of the transactions previously handled by the plaintiff. Such was also the character of the transaction here under scrutiny. The testimony of Hilbert shows clearly that he so regarded it, and the correspondence with McKay clearly indicates that defendant so regarded it. No amount of subsequent oral testimony denying such intent would be considered by reasonable men as changing the conclusion to be drawn from the evidence. For instance, on June 29, 1929, plaintiff wrote McKay advising him that the Hilbert transaction had been changed over from July to September, advising him that they had been obliged to take that action "to avoid delivery of the actual grain on contract, which, of course, we knew Mr. Hilbert was not intending to finance." November 27, 1929, plaintiff wrote McKay again, advising him that they would change over the December durum to May unless advised to the contrary, "as we presume that he does not want to run a chance of taking delivery on the contract." Again, on June 30, 1930, plaintiff advised McKay of a change-over to September, reciting, "We were sure that Mr. Hilbert did not want the actual grain."

Such being the evidence, reasonable minds could arrive at no other conclusion than that this transaction was a wager by Hilbert upon the future price of durum without intent to take delivery of the actual grain, and this with full knowledge by plaintiff of the nature of the transaction. To hold otherwise would be to ignore actualities.

The trial court was evidently led astray by some of the evidence in regard to what constituted a hedge. In the nature of things this transaction by Hilbert was not and could not be a hedge. We are therefore constrained to reverse the order of the trial court and remand the case with directions to enter judgment for the defendant.

Reversed.